**Angelo DIVITTORIO, Plaintiff–Appellant**

v.

**HSBC BANK USA., N.A., as Trustee on behalf of ACE Securities Corp., Home Equity Loan Trust and for registered holders of ACE Securities Corp., Home Equity Loan Trust, Series 2006–SD1, Asset–Backed Pass–Through Certificates, Ocwen Loan Servicing LLC, and Indymac Federal Bank, Defendants–Appellees.**

Civil Action No. 09–11449–EFH.

United States District Court,
D. Massachusetts.

Jan. 21, 2010.

Harvey S. Shapiro, Law Office of Harvey S. Shapiro, Boston, MA, for Plaintiff–Appellant.

David E. Fialkow, Nelson Mullins Riley & Scarborough LLP, Boston, MA, for Defendants–Appellees.

## MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

The appellant, Angelo DiVittorio, appeals from a decision of the United States Bankruptcy Court for the District of Massachusetts dismissing for failure to state a claim his action seeking statutory damages, attorney's fees, and a declaration confirming his right under Mass. Gen. Laws ch. 140D, § 10 (2007) to rescind a home refinance transaction occurring on March 13, 2003 (the "Underlying Transaction").[1] As part of the Underlying Trans-

---

1. DiVittorio also appeals the denial of his motion to extend stay of foreclosure in his

action, DiVittorio executed a note and granted to IndyMac Bank, FSB a first mortgage lien on his home. IndyMac is no longer a party to the present action[2] and appellant, HSBC Bank, USA, N.A.,[3] currently holds the mortgage.

DiVittorio alleges in his complaint that, before agreeing to the terms of the Underlying Transaction, he was provided a Truth–In–Lending disclosure statement that violated the Consumer Credit Cost Disclosure Act (the "CCCDA"), Mass. Gen. Laws ch. 140D §§ 1–35 (2007), the Massachusetts equivalent to the Federal Truth–In–Lending Act (the "TILA"), 15 U.S.C. §§ 1601–1667f (2006).[4] More specifically, DiVittorio alleges that this disclosure statement (1) stated an inaccurate Annual Percentage Rate (the "APR") for the loan; (2) failed to make clear and conspicuous disclosures of the APR and finance charges; and (3) failed to specify either the period of repayment or dates that the payments were due. The Court

now addresses only the first above-stated allegation, i.e. that the APR was inaccurate, and, for the reasons stated herein, remands the matter to the Bankruptcy Court for reconsideration of its decision.

With respect to the APR's inaccuracy, DiVittorio asserts that the APR was calculated assuming that he would receive an interest rate reduction for making his first twenty-two monthly payments on time. DiVittorio contends that this calculation failed to comply with a portion of the Official Staff Commentary to the TILA regulations (the "Commentary"), which, he asserts, requires that the APR be calculated using "the rate that would have been applied ... at the time of consummation," or, in other words, as if he had not yet earned the contractual rate reduction.[5]

In rejecting this argument, the Bankruptcy Court concluded that (1) the language relied on by DiVittorio did not appear in the Commentary until after he received the required CCCDA disclosures;

underlying Bankruptcy proceeding. As set forth in the Bankruptcy Court's Memorandum of Decision, DiVittorio filed a voluntary Chapter 13 petition in 2005. On February 5, 2009, the Bankruptcy Court granted Ocwen Loan Servicing, LLC, as servicer of the loan, relief from stay to foreclose on DiVittorio's home. On February 13, 2009, DiVittorio filed a motion seeking to vacate the order granting relief from stay on the basis that DiVittorio rescinded the loan. On March 10, 2009, DiVittorio filed the present adversary proceeding seeking a declaration of his right of rescission.

**2.** As specified in the Bankruptcy Court's Memorandum of Decision, both Ocwen Loan Servicing, LLC and Federal Deposit Insurance Corp., as receiver for IndyMac, were dismissed from the present action with the assent of DiVittorio.

**3.** As Trustee on behalf of ACE Securities Corp. Home Equity Loan Trust and for registered holders of ACE Securities Corp. Home Equity Loan Trust, Series 2006–SD1, Asset–Backed Pass–Through Certificates.

**4.** The Federal Reserve Board has exempted credit transactions within Massachusetts subject to the CCCDA from chapters two and four of the TILA, but requires that the Massachusetts statutory or regulatory provisions and state interpretations of those provisions be generally the same as the provisions and interpretations of the TILA. 12 C.F.R. 226(a)(1); 12 C.F.R. pt. 226, Supp. I, § 226.29(a)(4)(2009); see also Mass. Gen. Laws ch. 140D, § 3(a) (2007).

**5.** The relevant portion of the Commentary states:

When creditors use an initial interest rate that is not calculated using the index or formula for later rate adjustments, the disclosures should reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation....

12 C.F.R. pt. 226, para. 17(c)(1)(10)(I) (2009).

and (2) compliance with Commentary is not mandatory but merely a safe harbor for lenders acting in good faith.

These conclusions are erroneous for two reasons. First, the language on which Di-Vittorio relies was contained in the Commentary on March 13, 2003, the date, as alleged in the complaint, that he received the Truth–In–Lending disclosures. *See* 12 C.F.R. pt. 226, para. 17(c)(1)(10)(I) (2003); *see also* 12 C.F.R. pt. 226, para. 17(c)(1)(10)(I) (2002). Second, the United States Supreme Court has instructed that, "[u]nless demonstrably irrational," provisions of the Commentary are dispositive statements of what the TILA and its regulations require. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

While not technically binding as applied to the CCCDA, *Milhollin* is highly persuasive given the fact that the CCCDA is nearly identical to the TILA and the CCCDA incorporates the Commentary as an official state agency interpretation.[6] Furthermore, the Massachusetts Supreme Judicial Court has, in a similar vein as *Milhollin*, indicated that "[w]here [an agency's] statutory interpretation is reasonable ... the court should not supplant [the agency's] judgment." *Mass. Med. Soc. v. Comm'r of Ins.*, 402 Mass. 44, 520 N.E.2d 1288, 1298 (1988).

The matter is, therefore, remanded to the Bankruptcy Court for reconsideration of its decision in light of the Court's rulings herein.

The Court hereby REMANDS this matter for reconsideration.

SO ORDERED.

---

**6.** *See* Mass. Gen. Laws ch. 140D, § 3(b) (2007) ("Each official board interpretation or official staff interpretation that interprets a provision of the regulations issued under the Truth–in–Lending Act ... that is similar in substance to a provision of this chapter or the regulation issued thereunder, shall, until re-scinded by the board, be deemed by the commissioner to be an advisory ruling...."); 209 Mass.Code Regs. 32.27 (1998) ("Compliance with any provisions of the Federal Truth in Lending Act, the Board's Regulation Z, and the Official Staff Commentary, which does not conflict with M.G.L. c. 140D, 209 32.00 or an advisory ruling of the Commissioner, shall be deemed to be in compliance with M.G.L. c. 140D.").